PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 01-2468 & 02-2624

_____

UNITED STATES OF AMERICA

v.

HERBERT L. BENDOLPH,

Appellant at No. 01-2468

_____

UNITED STATES OF AMERICA

v.

JULIO OTERO,

Appellant at No. 02-2624

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. No. 95-cr-00068)
District Judge: Honorable Sue L. Robinson

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 96-cr-00005-3)
District Judge:  Honorable Sylvia H. Rambo

_____

Argued October 26, 2004
Reargued En Banc February 23, 2005

(Filed: May 16, 2005)

Before:  SCIRICA, Chief Judge, SLOVITER, NYGAARD,

ROTH, McKEE, RENDELL, BARRY, AMBRO, FUENTES,
SMITH, FISHER, AND VAN ANTWERPEN, <u>Circuit Judges</u>.


David R. Fine, Esq. (Argued)
Marsha A. Sajer, Esq.
Robert A. Lawton
Kirkpatrick & Lockhart Nicholson Graham LLP
240 North Third Street
Harrisburg, PA 17101
  *Counsel for Appellants*


Colm F. Connolly, United States Attorney, District of Delaware
Richard G. Andrews, Esq. (Argued)
Office of the United States Attorney
1007 N. Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE 19899-2046
  *Counsel for Appellees* at 01-2468


Thomas A. Marino, Esq.
  United States Attorney, Middle District of Pennsylvania
Theodore B. Smith, III, Esq. (Argued)
William A. Behe, Esq.
Office of the United States Attorney
228 Walnut Street
Harrisburg, PA 17108
  *Counsel for Appellees* at 02-2624


Maureen Kearney Rowley, Esq.
  Chief Federal Defender, Eastern District of Pennsylvania
Helen Marino, Esq.
Michael Wiseman, Esq.
Office of the Federal Defender
Suite 540 West – The Curtis Center
Philadelphia, PA 19106
  *Amicus Curiae supporting Appellants*


Patrick L. Meehan, Esq.
  United States Attorney, Eastern District of Pennsylvania

2

Laurie Magid, Esq.
Robert A. Zauzmer, Esq.
Michael J. Bresnick, Esq.
Office of the United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106
    *Amicus Curiae supporting Appellees*

———

### OPINION OF THE COURT

———

VAN ANTWERPEN, <u>Circuit Judge</u>.[1]

    This *en banc* court is presented with two cases consolidated on appeal. In the first case, Herbert Bendolph appeals from an order of the District Court which dismissed his motion to vacate, set aside, or correct a sentence under 28 U.S.C. § 2255 ("§ 2255 motion") as untimely. In the second case, Julio Otero appeals from an order of the District Court denying him appointed counsel for an ineffectiveness of counsel evidentiary hearing held pursuant to his § 2255 motion. The District Courts had jurisdiction over these matters pursuant to 28 §§ U.S.C. 1331 and 2255. Our jurisdiction arises under 28 U.S.C. §§ 1291 and 2255.

---

[1] Judge Van Antwerpen wrote the opinion of the Court in which Chief Judge Scirica and Judges Roth, Rendell, Barry, Smith and Fisher joined. Judge Nygaard filed an opinion concurring in part and dissenting in part, in which Judges Sloviter, McKee, Ambro, and Fuentes joined. Judge Sloviter filed an opinion dissenting, in which Judges Nygaard, McKee, Ambro, and Fuentes joined.

Both cases raise issues concerning whether, under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), courts may raise the timeliness of § 2255 motions *sua sponte*, and, if so, under what circumstances. Neither case falls within the summary dismissal period of Rule 4 of the Rules Governing Section 2255 Cases for the United States District Courts ("Rule 4 period") because in both cases the government has filed answers that did not raise the AEDPA statute of limitations as a defense.

We asked the parties and *amici*[2] to brief four main issues. *First*, may the government waive the AEDPA statute of limitations as a defense? *Second*, may a district court raise it *sua sponte*? *Third*, if so, at what stages in a habeas case may a district court raise the limitations issue? *Fourth*, may a district court still raise the issue even if the government concedes waiver?

For the reasons discussed herein, we answer the first, second, and fourth issues in the affirmative. As to the third, we answer by concluding that (i) during the Rule 4 period, after giving notice and an opportunity to respond,[3] courts may raise

---

[2] We acknowledge the consistently excellent advocacy provided by *pro bono* counsel on behalf of Messrs. Bendolph and Otero throughout the duration of these appeals, as well as the excellent briefs provided by both *amici* in advance of re-argument *en banc.*

[3] Although the court may act upon what plainly appears from the motion, attached exhibits and record, not all limitations issues may

the AEDPA statute of limitations issue *sua sponte* without analysis of prejudice; and (ii) after the Rule 4 period has ended, courts may continue to raise the AEDPA statute of limitations issue *sua sponte*, but only after providing, consistent with our prior decisions in *Robinson v. Johnson*, 313 F.3d 128 (3d Cir. 2002), and *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004), notice, an opportunity to respond, and an analysis of prejudice. Accordingly, we will affirm the District Court's order in *Bendolph.* In *Otero*, we will reverse and remand to the District Court, with instructions to the District Court that it has discretion to raise the AEDPA limitations issue *sua sponte.*

I.

The relevant facts of these cases may be summarized as follows. A jury in the United States District Court for the District of Delaware convicted Herbert Bendolph of being a felon in possession of a firearm. We affirmed his conviction, 116 F.3d 470, entering judgment on May 5, 1997. The Delaware Federal Defender, acting as Bendolph's counsel, then filed a petition with the Supreme Court of the United States for a writ of *certiorari* on August 25, 1997. Under Supreme Court Rule 13.1, which requires the filing of such petitions within 90 days of judgment, Bendolph's petition was untimely. The Clerk of the Supreme Court was unaware of this, however, because

---

appear in such manner. As such, notice and an opportunity to respond should be afforded during the Rule 4 stage. *See* footnote 12 *infra.*

someone involved in the filing of the petition impermissibly altered the date of this Court's judgment. On the copy filed with the Supreme Court, someone had typed the number "27" over the "5" in the judgment date of May 5, 1997. As a result, the Clerk of the Supreme Court mistakenly believed the petition for *certiorari* was timely.[4]

A year later, on October 18, 1998, Bendolph filed a *pro se* motion under 28 U.S.C. § 2255. This too was untimely: Bendolph was obligated under the AEDPA's one-year statute of limitations to have filed his motion by August 4, 1997, one year from the date on which the 90 day period to file a petition for *certiorari* had ended. *See* U.S. Supr. Ct. R. 13; *Kapral v. United States*, 166 F.3d 565, 575, 577 (3d Cir. 1999) (holding that a judgment may become "final" in the context of §§ 2254 and 2255 when "the date on which the defendant's time for filing a timely petition for *certiorari* review expires").[5] Two weeks after Bendolph filed his § 2255 motion, the District Court ordered the government to file an answer. It did so on December 17, 1998,

---

[4] The Supreme Court subsequently denied the petition for writ of *certiorari* on October 20, 1997.

[5] Bendolph did not get the benefit of tolling for the time the petition was under consideration by the Supreme Court because the petition was untimely and therefore not properly filed. *See, e.g., Merritt v. Blaine*, 326 F.3d 157, 164 (3d Cir. 2003) ("'an application is '*properly filed*' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings,'" including "'the time limits upon its delivery'") (quoting *Artuz v. Bennett*, 531 U.S. 4, 8, 121 S.Ct. 361, 361, 148 L.Ed.2d 213 (2000)) (emphasis in *Artuz*).

6

and did not raise the AEDPA limitations defense.[6]  Eight months
later, the District Judge retired, and the matter was reassigned to
another District Judge.

One year later, on August 24, 2000,[7] the District Court
entered an order suggesting the case was untimely under our
decision in *Kapral,* 166 F.3d at 575-77, given that Bendolph had
not timely filed a petition for *certiorari* by August 4, 1997, or 90
days after our May 5, 1997 judgment.  In its August 24, 2000
order, the District Court identified the reasons why the case
appeared to be time-barred, invited the parties to brief the issue,
and set a deadline of September 21, 2000 for Bendolph to
respond to the District Court's analysis.  Bendolph filed a three-
page memorandum almost two weeks before that deadline, on
September 8, 2000.  The government responded on October 5,
2000, agreeing with the District Court that the case was time-
barred.  The District Court subsequently dismissed Bendolph's §
2255 motion as untimely on January 3, 2001.  Now, on appeal,
Bendolph argues the District Court lacked the authority to raise
the AEDPA limitations period *sua sponte* because the
government had waived the defense by not raising it in its

---

[6]  At the time this answer was filed, we had not yet rendered our
decision in *Kapral.*

[7]  Although the District Court docket sheet and the parties cite
August 24, 2000 as the date of the District Court's order, our review of
the record shows August 22, 2000 as the date of that order.  The
discrepancy does not affect the issues now before us.

7

answer.[8]

In the second case, Julio Otero pled guilty to operating a continuing criminal enterprise in violation of 21 U.S.C. § 848(a). On May 27, 1998, the United States District Court for the Middle District of Pennsylvania sentenced him to life imprisonment. In accordance with his plea agreement, Otero did not appeal his conviction. On June 25, 2001, Otero filed a *pro se* § 2255 motion challenging the validity of his sentence on several grounds, including ineffective assistance of counsel. The government filed its answer on September 17, 2001. It did not raise the AEDPA's statute of limitations as a defense.[9]

The District Court initially denied all of Otero's claims except his ineffective assistance of counsel claim, for which an evidentiary hearing was scheduled. The District Court did not appoint counsel to represent Otero at that hearing, and denied his claim on the merits. Otero argues on appeal that (i) the District Court erred in failing to appoint counsel for him at his evidentiary hearing, and (ii) neither the District Court nor the government may raise the AEDPA statute of limitations issue on

─────────────────

[8] The government initially conceded waiver in *Bendolph*, but now contends under *Long*, which we had not yet rendered at the time these cases were first argued, that waiver has not yet occurred.

[9] The statute of limitations issue was first raised on August 19, 2003 when a panel of this Court entered an order granting Otero a certificate of appealability.

8

remand because the government has waived the defense.[10]

## II.

We turn first to the District Court's decision not to provide counsel to Otero at his ineffective assistance of counsel evidentiary hearing. Rule 8(c) of the Rules Governing Section 2255 Cases requires that "[i]f an evidentiary hearing is warranted, the judge must appoint an attorney to represent a moving party who qualifies to have counsel . . . [as an indigent]." The appointment of counsel is clearly mandatory for an indigent petitioner. *See United States v. Iasiello*, 166 F.3d 212, 213-14 (3d Cir. 1999) (vacating judgment and remanding to district court where district court conducted a § 2255 evidentiary hearing without appointing counsel to indigent movant). "[H]arm to [a movant] must be presumed when his statutory right to counsel is thus abridged." *Id.* at 214. The government does not dispute that, as a federal inmate since 1996, Otero is likely indigent; nor does it attempt to rebut the presumption of prejudice. Accordingly, we must reverse the District Court's dismissal of Otero's ineffective assistance of counsel claim. The record is unclear as to whether Otero is indigent and the District Court should inquire as to his status. Should he qualify as indigent, he must be afforded counsel for his ineffective assistance of counsel claim.

---

[10] As in *Bendolph*, the government in *Otero* initially conceded waiver but has now reversed its position in light of our decision in *Long*.

III.

A.

We now turn to the four main issues, *supra,* before us in these consolidated appeals.  The analysis of the AEDPA statute of limitations issue, which in these two cases involves undisputed facts, is subject to plenary review.  *See, e.g., Long*, 393 F.3d at 396 (citing *Swartz v. Meyers*, 204 F.3d 417, 419 (3d Cir. 2000)); s*ee also Werts v. Vaughn*, 228 F.3d 178 (3d Cir. 2000).

As we observed in *Long*, our analysis necessarily begins with *Robinson*, 313 F.3d 128.  Our prior discussion of that case in *Long* is thorough, *see* 393 F.3d at 396-98, and needs no further elaboration here.  In *Long* we encapsulated *Robinson*'s holdings as follows:

> [F]irst . . . because the statute of limitations is not
> jurisdictional in nature, *see Miller v. New Jersey*
> *State Dep't of Corr.*, 145 F.3d [616], 617-18 [(3d
> Cir. 1998)], the state may waive the defense . . . .
> [W]e then considered whether Federal Rule of
> Civil Procedure 8(c) requires that a defendant
> plead . . . a statute of limitations[] in its answer. . .
> .  We explained:  "Parties are generally required to

10

assert affirmative defenses early in litigation, so . .
. prejudice may be avoided[] and judicial resources
may be conserved.  Habeas proceedings are no
exception.". . . We further emphasized:  "The
purpose . . . is to avoid surprise and undue
prejudice by providing the plaintiff with notice and
the opportunity to demonstrate why the affirmative
defense should not succeed.". . . .

[We then] held that "a limitations defense does not
necessarily have to be raised in the answer[,]"
[but] must be raised "as early as practicable"
thereafter. . . .  What the earliest practicable or
possible or feasible moment might be in another
case . . . we necessarily left open.

*Long*, 393 F.3d at 397-98 (quoting *Robinson*, 313 F.3d at 134-
37).  Consistent with these holdings, we then analyzed in *Long* a
Magistrate Judge's report and recommendation that flagged the
limitations issue *sua sponte*.  We used the analytical framework
provided by Federal Rule of Civil Procedure 15(a) because the
government had subsequently filed, in response, an
"endors[ment] [of] the Magistrate Judge's view that the habeas
petition was untimely."  *Long*, 393 F.3d at 395.  Under Rule
15(a), we articulated a standard for judging prejudice in the
AEDPA statute of limitations context as follows:

> [Our prior cases including *Robinson*] counsel that, whether a habeas petitioner has been prejudiced by the assertion of the AEDPA statute of limitations defense after an answer has been filed is the ultimate issue, and that prejudice turns on such factors as how late in the proceedings the defense was raised, whether the petitioner had an opportunity to respond, and whether the respondent acted in bad faith . . . . Delay is related to prejudice but was not a problem here, and inadvertence does not equal bad faith.

*Id.* at 401 (internal citations omitted). We held that Long was not prejudiced by the government's delay in raising the limitations defense, which it had done through its express endorsement of the Magistrate Judge's analysis of the timeliness issue. We then concluded that the District Court did not abuse its discretion by construing the government's filing as an amendment to its answer. *Id.* at 401.

Addressing the Magistrate Judge's *sua sponte* flagging of the limitations issue, we said:

> Our answer to [this issue] was foreshadowed by *Banks v. Horn*, 271 F.3d 527, 533 n.4 (3d Cir. 2001), *rev'd on other grounds*, 536 U.S. 266, 122 S.Ct. 2147, 1153 L.Ed.2d 301 (2002) . . . . In a

footnote . . . we expressed the view that a court of
appeals could address the AEDPA statute of
limitations defense *sua sponte* even if the habeas
respondent had waived the issue on appeal.  We
wrote:

> "Even if not raised, we believe we could
> consider the issue *sua sponte* . . . . The Court
> has the power to notice a 'plain error' though
> it is not assigned or specified . . . . In
> exceptional circumstances, especially in
> criminal cases, appellate courts, in the public
> interest, may, of their own motion, notice
> errors to which no exception has been taken,
> if the errors are obvious, or if they otherwise
> seriously affect the fairness, integrity or
> public reputation of judicial proceedings." . . .

> . . .

Thus we observed prior to *Robinson* that the
AEDPA statute of limitation is an important issue,
the raising of which may not necessarily be left
completely to the state.

*Long*, 393 F.3d at 401-02 (quoting *Banks*, 271 F.3d at 533 n.4)
(internal citations and quotations omitted).  After then reviewing

13

the relevant decisions of the other courts of appeals, especially
*Acosta v. Artuz*, 221 F.3d 117 (2d Cir. 2000), we held further
that

> our decision in *Robinson* . . . does not prevent a
> magistrate judge from raising the AEDPA statute
> of limitations defense *sua sponte* even after an
> answer has been filed.

*Long*, 393 F.3d at 403 (internal citations omitted).

Fundamental to our analysis was (i) our agreement with
the Second Circuit that "[w]hile civil in nature, habeas corpus
cases are different from ordinary civil cases where only the
interests of the parties are involved," *Long*, 393 F.3d at 402
(citing *Acosta,* 221 F.2d at 123), and (ii) our conclusion that
courts "may raise the . . . limitations issue . . . after an answer
has been filed." *Long*, 393 F.3d at 403.  Our basis for the latter
was *Granberry v. Greer*, 481 U.S. 129, 134-35, 107 S.Ct. 1671,
95 L.Ed.2d 119 (1987) (holding courts have discretion, in
interests of comity and federalism, to require that a claim be
fully exhausted or to reject it if it plainly lacks merit), as well as
our prior decisions in cases such as *Sweger v. Chesney*, 294 F.3d
506, 520-21 (3d Cir. 2002) (holding courts may consider *sua
sponte* whether procedural default bars claim), *cert. denied*, 538
U.S. 1002, 123 S.Ct. 1902, 155 L.Ed.2d 830 (2003) and *Szuchon
v. Lehman*, 273 F.3d 299, 321 n.13 (3d Cir. 2001) (holding court

of appeals can *sua sponte* consider procedural default).  *See Long*, 393 F.3d at 402-403.

We rejected two decisions *contra, Scott v. Collins*, 286 F.3d 923 (6th Cir. 2002) and *Nardi v. Stewart*, 354 F.3d 1134 (9th Cir. 2004), concluding they were "at odds with *Robinson* and our Rule 15(a) jurisprudence, which do not require that affirmative defenses be pled in the first responsive pleading." *Long*, 393 F.3d at 403.  We then stated that:

> [h]aving in mind that AEDPA's statute of limitations, like other procedural habeas issues, furthers the principles of comity, finality, and federalism, . . . we hold further that a federal magistrate judge may, consistent with *Robinson v. Johnson* . . . raise *sua sponte* the AEDPA statute of limitations defense even after an answer has been filed.

*Long*, 393 F.3d at 404 (internal citations omitted).

With the analytical framework of *Robinson* and *Long* in mind, we turn to the questions before us.

B.

We must first address whether our decisions in the *Long*

15

and *Robinson* § 2254 cases apply to the § 2255 cases before us today.  In resolving the question, we are mindful of our obligation to be faithful to the intent of Congress' 1996 habeas corpus reforms.  Congress was cognizant not just of the practical realities of habeas filings, but also the spectrum of federal interests that those realities implicate, as evidenced by "the profound *societal* costs that attend the exercise of habeas jurisdiction."  *Calderon v. Thompson*, 523 U.S. 538, 554, 118 S.Ct. 1489, 1500, 140 L.Ed.2d 728 (1998) (internal quotation omitted) (emphasis added).  "'AEDPA's purpose'" is not only to further the interests of comity and federalism, but also to further the "'finality'" of convictions, *Duncan v. Walker*, 533 U.S. 167, 178, 121 S.Ct. 2120, 2127, 146 L.Ed.2d 435 (2001) (quoting *Williams v. Taylor*, 529 U.S. 420, 436, 120 S.Ct. 1479, 1490, 146 L.Ed.2d 435 (2000)), and to curb abusive habeas filings. *See, e.g.,* H.R. Conf. Rep. No. 104-518, at 111 (1996), *reprinted in* 1996 U.S.C.C.A.N. 944 (stating that AEDPA was passed, in relevant part, "to curb the abuse of the statutory writ of habeas corpus").[11]  Other courts have similarly held that "a signal purpose[] animating AEDPA is the desire of Congress to achieve

---

[11]  *See also* 141 Cong. Rec. S7803-01 (daily ed. June 7, 1995) (statement of Sen. Nickles) ("[H]abeas procedures are wasteful.  The current system is wasteful of limited resources.  At a time when both State and Federal courts face staggering criminal caseloads, we can ill afford to make large commitments of judicial and prosecutorial resources to procedures of dubious value in furthering the ends of justice."); *Williams*, 529 U.S. at 436, 120 S.Ct. at 1490 (observing that, in passing the AEDPA, it was Congress' "intent to avoid unneeded evidentiary hearings in federal habeas corpus").

16

finality in criminal statutes, both federal and state." *Brackett v. United States*, 270 F.3d 60, 69 (1st Cir. 2001) (citations omitted), *cert. denied*, 535 U.S. 1003, 122 S.Ct. 1575, 152 L.Ed.2d 495 (2002).  *See also United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000) (noting the "intent of Congress that claims under § 2255 be advanced within one year after a judgment of conviction becomes final") (internal citations omitted).

We have similarly recognized the wide spectrum of interests that Congress intended to protect through habeas reform.  *See, e.g., Long*, 393 F.3d at 402-03 (identifying interests of judicial economy and finality of judgments in concluding that "[t]he AEDPA statute of limitations is an important issue, the raising of which may not necessarily be left completely to the state"); *Robinson,* 313 F.3d at 137 (recognizing an interest in not "wasting precious legal and judicial resources").  *See also United States v. Brooks*, 230 F.3d 643, 649 (3d Cir. 2000) (observing Congress' intent in amending § 2255 was "to place limits on federal collateral review"); *Banks*, 271 F.3d at 533 n.4 (recognizing interests of, *inter alia*, the public reputation of judicial proceedings and the public interest generally); *Kapral*, 166 F.3d at 571 (recognizing "Congress['] inten[t] to reduce . . . delayed and repetitive [habeas] filings") (internal quotation omitted); *Miller*, 145 F.3d at 618 (stating that the AEDPA "was enacted, in relevant part, to curb the *abuse* of the writ of habeas corpus.") (emphasis in original).

17

It is thus clear, we believe, that Congress' intent with respect to habeas reform – one facet of which is the AEDPA statute of limitations – was not limited to interests of federalism and comity, which apply only to petitions filed under § 2254. Rather, Congress was concerned with abuses of, and the interests implicated by, habeas filings under both §§ 2254 and § 2255.[12]

Second, to provide guidance to the district courts, as well as to avoid confusion, we have previously held that we should treat § 2255 motions and § 2254 petitions the same absent sound reason to do otherwise. *See, e.g., Miller*, 145 F.3d at 619 n.1 ("[T]o provide guidance to the district courts, and hence facilitate the orderly administration of justice in these cases, we have followed the practice, whenever we decide an AEDPA issue that arises under § 2254 and the same holding would analytically be required in a case arising under § 2255, or vice versa, of so informing the district courts."). We see no reason to depart from this practice here.

Third, such an approach is consistent with the interests served by statutes of limitations generally. Limitations periods "protect defendants *and* the courts . . . ," *United States v. Kubrick*, 444 U.S. 111, 117, 100 S.Ct. 352, 357, 62 L.Ed.2d 259 (1979) (internal quotation omitted) (emphasis added), because

---

[12] This conclusion is further reinforced, of course, by the purpose underlying Rule 4 of the Rules Governing Section 2254 and 2255 Cases, which promotes interests of judicial economy and efficiency.

they "free[] . . . courts from adjudicating stale claims," *Sun Oil Co. v. Wortman*, 486 U.S. 717, 736, 108 S.Ct. 2117, 2129, 100 L.Ed.2d 743 (1988) (Brennan, J., concurring). They also support "'the minimization of unnecessary litigation.'" *Felder v. Casey*, 487 U.S. 131, 154, 108 S.Ct. 2302, 2315, 101 L.Ed.2d 123 (1988) (White, J., concurring) (internal quotation omitted). These public and judicial interests transcend the parties to a litigation in the same way as the interests furthered by the AEDPA's limitations period. *See Long*, 393 F.3d at 402-04; *Robinson*, 313 F.3d at 134-37; *Banks*, 271 F.3d at 533 n.4; *Artuz*, 221 F.3d at 123.[13]

Because there exist sound reasons to approach the AEDPA limitations period the same under both §§ 2254 and 2255, and because to do so is faithful with both Congress' intent and our habeas jurisprudence, we hold that our § 2254 decisions in *Robinson* and *Long* apply to AEDPA limitations issues arising under § 2255.

## C.

We return to the four main issues we asked the parties

---

[13] Moreover, limitations periods should be construed consonant with the legislative scheme they support. *See, e.g., American Pipe & Const. Co. v. Utah*, 414 U.S. 538, 557-58, 94 S.Ct. 756, 768, 38 L.Ed.2d 713 (1974). As discussed throughout this opinion, Congress plainly intended strict reform of habeas corpus in passing the AEDPA, and the practical problems of attempting to re-litigate matters which are many years old are obvious.

and *amici* to brief.

(1)    With regard to the government's ability to waive the AEDPA statute of limitations, all of the parties and both *amici* agree that, under our decisions in *Miller*, *Robinson*, and *Long*, discussed *supra*, the limitations period is not jurisdictional and therefore is subject to equitable considerations such as waiver.  We accordingly reaffirm our holdings on these issues in these cases.

The more difficult question, which we address *infra*, remains:  whether a party's waiver of a defense, intentional or not, may impact the exercise of an inherent power that a court may possess in the circumstances presented here.  We foreshadow our answer by observing that neither the parties nor *amici* have cited to us authority requiring that a party's waiver of a defense must necessarily curtail the inherent powers of a court.

(2)    As to the second main issue, whether courts *ever* have the power to act *sua sponte* in the circumstances here, the answer is plainly yes.  First, as we have discussed *supra*, the cases confirm, in similar contexts, an analogous power.  *See, e.g., Granberry*, 481 U.S. at 134-35, 107 S.Ct. 1671; *Sweger*, 294 F.3d at 520-21; *Szuchon*, 273 F.3d at 321 n.13.  This authority is persuasive with respect to the issue before us because we have already recognized that the AEDPA statute of limitations is "like other procedural habeas issues."  *Long*, 393

F.3d at 404.  The application of such cases to the circumstances
before us also conforms with *sua sponte* jurisprudence
generally.[14]

Second, while two circuits disagree with our conclusion
in *Long* as to *when* a court may act *sua sponte*, all of the courts
of appeals that have considered the issue agree that courts do
possess a *sua sponte* power to raise the limitations issue.  *See,
e.g., Hill v. Braxton*, 277 F.3d 701, 705-06 (4th Cir. 2002)
("Even though the limitations period is an affirmative defense, a
federal habeas court has the power to raise affirmative defenses

---

[14] In addition to the powers *Granberry* observed, courts may
dismiss *sua sponte* for other reasons as well.  *See, e.g., Acosta*, 221 F.3d
at 121 (collecting cases); *Kiser v. Johnson*, 163 F.3d 326, 329 (5th Cir.
1999) (collecting cases).  Nor is the power limited to the habeas context.
*See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 502, 67 S.Ct. 839,
840, 91 L.Ed.2d 1055 (1947) (inherent power to dismiss pursuant to the
doctrine of *forum non conveniens*); *Molinaro v. New Jersey*, 396 U.S.
365, 366, 90 S.Ct. 498, 499, 24 L.Ed.2d 586 (1970) (inherent power to
dismiss if the defendant is a fugitive).

Analogously instructive is the Supreme Court's decision in *Link
v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).
*Link* rejected the argument that the power afforded to civil defendants
under Fed. R. Civ. P. 41 to move for involuntary dismissals necessarily
extinguishes, by negative implication, the courts' powers to dismiss *sua
sponte*.  *Link*, 370 U.S. at 629-30, 82 S.Ct. 1388 (observing courts have
inherent power to dismiss *sua sponte* "to clear their calendar of cases .
. . dormant because of inaction or dilatoriness . . . .").  *Link* counsels that
concerns arising from *sua sponte* dismissals are best addressed not by
curtailing inherent powers, but rather by determining whether a court has
acted "within the permissible range of the court's discretion."  *Id.* at
633, 82 S.Ct. 1389.  We did as much in *Long*, an approach we reaffirm
today.

*sua sponte* . . . . We agree with our sister circuits that have determined a district court has the power to raise the limitations defense [to a § 2254 petition] *sua sponte*."); *Jackson v. Sec'y for the Dep't of Corr.*, 292 F.3d 1347, 1349 (11th Cir. 2002) (per curiam) ("we hold that the district court possessed the discretion to raise *sua sponte* the timeliness issue"); *Artuz*, 221 F.3d at 124 (holding "a district court has the authority to raise the AEDPA statute of limitations on its own motion"); *Kiser v. Johnson*, 163 F.3d 326, 329 (5th Cir. 1999) ("In holding that Fed. R. Civ. P. 8(c) does not bar *sua sponte* consideration of the AEDPA's statute of limitations provision, we follow a long line of precedent establishing the authority of courts to raise non-jurisdictional defenses *sua sponte* in habeas cases."). *See also United States v. Sosa*, 364 F.3d 507, 510 (4th Cir. 2004) (applying *Hill* to motion filed under § 2255).

The decisions *contra* to our decision in *Long* with respect to *when* a district court may *sua sponte* raise the limitations issue do not suggest that courts lack the inherent power in the first place. *See Herbst v. Cook*, 260 F.3d 1039, 1042 (9th Cir. 2001) ("The district court . . . had the authority to raise the [AEDPA] statute of limitations *sua sponte*."); *Nardi v. Stewart*, 354 F.3d 1134, 1141 (9th Cir. 2004) (reaffirming *Herbst*'s holding that a district court may raise *sua sponte* the limitations defense, but narrowing the time period in which the court can do so); *Scott v. Collins*, 286 F.3d 923, 930 (6th Cir. 2002) (holding Rule 4 does not give a district court "continuing" power to dismiss *sua*

22

*sponte* after the Rule 4 period ends).[15]

As we discussed *supra* and first articulated in *Long*, the interests underlying the AEDPA's statute of limitations that are applicable to § 2255 motions are furthered, not hindered, by courts exercising discretionary power *sua sponte* in post-answer cases such as those before us here. *See Long*, 393 F.3d at 402-03 (identifying interests of judicial economy and finality of judgments); *Robinson,* 313 F.3d at 137 (identifying "precious legal and judicial resources"). *See also Banks*, 271 F.3d at 533 n.4 (recognizing the public reputation of judicial proceedings and the public interest generally); *Kapral*, 166 F.3d at 571

---

[15] Thus it cannot be doubted that, at the very least, courts possess a *sua sponte* power during those stages of a habeas case governed by Rule 4 of the Rules Governing Section 2254 and Section 2255 Cases. That rule states in pertinent part:

> If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

*See* § 2255 Rule 4(b); *see also* § 2254 Rule 4. As this language anticipates, the issues relevant to timeliness may not all appear on the face of a motion or petition, and for this reason courts should give notice that a limitations problem may exist, as well as provide an opportunity for a habeas movant or petitioner to respond. *See, e.g., Hill v. Braxton*, 277 F.3d 701, 707 (4th Cir. 2002); *Acosta v. Artuz*, 221 F.3d 117, 121 (2d Cir. 2000). We make no distinction as between habeas movants filing *pro se* and those represented by counsel. *See, e.g., McMillan v. Jarvis*, 332 F.3d 244, 245 (4th Cir. 2003) (holding *Hill*'s notification requirement applies to habeas movants represented by counsel as well as those proceeding *pro se*).

23

(recognizing "Congress['] inten[t] to reduce . . . delayed and repetitive [habeas] filings") (internal quotation omitted).

Finally, we consider the argument *contra*, a thumbnail sketch of which is this:  Habeas cases are civil, governed by the Federal Rules of Civil Procedure.  As such, the AEDPA statute of limitations must be treated like any other in a civil case.  Therefore, it is a defense possessed by the habeas respondent alone, and courts may not intervene.

The argument plainly rests on the premise that habeas cases and ordinary civil cases are indistinguishable, something we disagreed with in *Long* and do so again today.  *See, e.g., Harris v. Nelson*, 394 U.S. 286, 293-94, 89 S.Ct. 1082, 1087-88, 22 L.Ed.2d 281 (1968) ("It is, of course, true that habeas corpus proceedings are characterized as 'civil.' . . .  But the label is gross and inexact.  Essentially, the proceeding is unique.  Habeas corpus practice in the federal courts has conformed with civil practice only in a general sense.") (internal citations and footnote omitted); *Long*, 393 F.3d at 402 ("While civil in nature, habeas corpus cases are different from ordinary civil cases where only the interests of the parties are involved.") (citing *Acosta,* 221 F.2d at 123); *see also O'Brien v. Moore*, 395 F.3d 499, 505 (4th Cir. 2005) (noting the unique hybrid nature of habeas actions and collecting cases observing same); *Walker v. O'Brien*, 216 F.3d 626, 636 (7th Cir. 2000) (observing that habeas cases are a "group unto themselves"); *Brown v. Vasquez*, 952 F.2d

24

1164, 1169 (9th Cir.1991) (noting habeas corpus is "dramatically different from any other type of civil action").

As to the claim that the AEDPA statute of limitations is the government's alone to use or lose, we have found no authority supporting such exclusivity. Certainly, we have been cited to none. As such, we must doubt that Congress intended to relegate the efficacy of its reforms to the vagaries of a prosecutor's decisions or mistakes.[16] Similarly, we discern no Congressional intent to hamstring courts in carrying out its reforms. The better conclusion is that Congress did not render the courts powerless.[17]

---

[16] For this reason, federal habeas courts acting *sua sponte* need not invite the government to amend an answer pursuant to Rule 15(a), nor wait to see if the government responds. *See also Carlisle v. United States*, 517 U.S. 416, 437, 116 S.Ct. 1460, 1471, 134 L.Ed.2d 613 (1996) (Stevens, J., dissenting) ("It is quite wrong . . . to assume that a judge is nothing more than a referee whose authority is limited to granting or denying motions advanced by the parties."). And while government prosecutors have both prosecutorial discretion and heightened ethical duties to do justice, such considerations do not justify subordinating judicial power to the presence or absence of the AEDPA limitations defense in a government answer or motion.

[17] If nothing else, if the power exists, there is nothing to suggest that Congress has taken it away. While Congress may limit the courts' inherent powers, we should not "lightly assume that Congress intended to do so." *Chambers v. Nasco, Inc.*, 501 U.S. 32, 47, 111 S.Ct. 2123, 2134, 115 L.Ed.2d 27 (1991) (internal quotation omitted). Here, the statutory language and legislative history are silent, and "something far more than ambiguous silence is required to withdraw a district court's inherent power." *Carlisle*, 517 U.S. at 449, 116 S.Ct. at 1477 (Stevens, J., dissenting).

For all of these reasons, we reaffirm *Long* and hold that courts have the power to raise the AEDPA limitations issue *sua sponte* in cases arising under 28 U.S.C. §§ 2254 and 2255.

(3)    What remains are our final two main issues and their application to the cases before us.  For analytical purposes, they may be combined:  Given the courts' power to raise the AEDPA statute of limitations *sua sponte*, at what stages may they do so, and does it matter if the government has waived?

We hold the answer is once again provided by our decision in *Long*.  Our analysis there presents no obvious reason why, given notice and an opportunity to respond, and absent prejudice to the habeas petitioner or movant, a court's exercise of its *sua sponte* powers should be limited to only the Rule 4 period.[18]  The spectrum of interests that we identify in *Robinson*, *Long*, and this opinion today – finality and judicial efficiency, most notably, but also the public interest and the public reputation of judicial proceedings – are just as ably advanced

---

[18]    Although we have not yet had occasion to reach the question, other courts of appeals have held the AEDPA statute of limitations constitutional in the face of *per se* challenges brought under the Suspension Clause of the United States Constitution, Art. I, § 9, cl. 2. *See, e.g., Wyzykowski v. Dep't of Corr.*, 226 F.3d 1213, 1217 and n.3 (collecting cases).  *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (AEDPA's restrictions on successive petitions "do not amount to a 'suspension' of the writ"); *Swain v. Pressley*, 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed. 411 (1977) (holding that the Suspension Clause is violated only where habeas corpus is rendered "inadequate or ineffective").

post-answer as pre-answer when an untimely case is dismissed upon a district court's own motion.  Recognition of this disentangles the overriding federal, judicial, and societal interests that are relevant to our analysis from those that concern the parties alone.  Further, as we have stated, such an approach is not only most faithful to Congress' 1996 habeas reforms, but it is also most certainly not inconsistent with existing authority.  We have been cited to nothing that requires the inherent *sua sponte* power to terminate at the conclusion of the Rule 4 period, and we can find no such authority ourselves.

The above considerations, which we fully articulated in *Long*, are no less persuasive in instances where the government has either waived the limitations defense or so concedes.  Not only are habeas cases different, but, as for the AEDPA limitations provision, the government can claim no monopoly on its use.

To conclude otherwise asks too much of waiver, which occurs only upon the "'intentional relinquishment or abandonment of a known right.'"  *United States v. Olano*, 507 U.S. 725, 733, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed 1461 (1938)).  Unlike ordinary civil litigation, the practical reality of habeas is that the government may lack, for long periods of time, the file documents necessary to knowledgeably analyze timeliness.  As *amicus* Federal Defender

27

observes, habeas cases present "sometimes difficult questions of time computation." Brief of *Amicus* at 13. Indeed, the Supreme Court has explained:

> [D]istrict judges often will not be able to make [AEDPA limitations] calculations based solely on the face of habeas petitions . . . . [As] [s]uch calculations depend on information contained in documents that do not necessarily accompany the petitions.

*Pliler v. Ford*, 542 U.S. 225, 124 S.Ct. 2441, 2446, 159 L.Ed.2d 338 (2004) (citation omitted). The result is that, all too easily, habeas respondents and courts may "err in their calculation . . . ." *Id*. at 2447. Even when the record papers are obtained, it can be difficult to decipher what a *pro se* habeas movant has done, meaning many "waivers" will not actually have been "the result of a purposeful or deliberate decision to forego the defense." *Scott*, 286 F.3d at 931 (Stafford, J., dissenting).[19] For these reasons and others, *Long* correctly

---

[19] For these reasons, as a matter of elapsed time, the first practicable chance to knowledgeably raise a timeliness issue often arises later in the life of a habeas case than it would in an ordinary civil one. Thus we have already recognized the need for a longer pre-waiver period in habeas. *See Robinson*, 313 F.3d at 136-37 (allowing post-answer raising of the defense at the "earliest practicable moment"). *Long*, consistent with *Robinson*, then confirmed that prejudice is the "ultimate issue." *See Long*, 393 F.3d at 401. Our earliest practicable moment standard in *Robinson* and our prejudice standard in *Long* correctly balance the realities summarized in *Pliler*, 124 S. Ct. at 2446, and a

instructs that the analysis in the first instance turns not on waiver, but rather on whether courts have the inherent power to protect themselves from habeas abuse, post-answer, consistent with Congress' intent, and whether, where a court exercises that power, the habeas movant is prejudiced.

(4)  With these precepts in mind, we turn to the cases before us.  In *Bendolph*, a judgment entry of this Court was intentionally and impermissibly altered by someone involved in filing Bendolph's petition for a writ of *certiorari*, to conceal the untimeliness of a Supreme Court filing.  Such an act should not, of course, be countenanced in any way.  Without doubt, the ability of a court to deal with such a circumstance is inherently within its *sua sponte* powers, and does not depend on the responding party's position.

The issue before us, however, is whether the District Court could raise the AEDPA limitations issue on its own motion, and, if so, whether the exercise of that power was limited by a government waiver.  For the reasons we have discussed above, we conclude that the District Court did possess the power to flag the issue *sua sponte*, and that even if the government's actions did constitute waiver, that waiver could

---

habeas petitioner's due process rights.

not have limited the court's exercise of its power.[20]

The questions remaining are (i) whether the District Court provided Bendolph with adequate notice of the issue and an opportunity to respond, and (ii) whether Bendolph was prejudiced by the District Court's motion. The record shows that the District Court's August 24, 2000 order placed both Bendolph and the government on notice, both by raising the timeliness issue and by articulating the reasons why Bendolph's filing appeared untimely. In that same order, the District Court expressly invited the parties to brief or otherwise respond to its analysis. Bendolph was given until September 21, 2000 to respond. That the District Court's order constituted sufficient notice and provided sufficient time and opportunity to respond is evidenced by the fact that Bendolph filed his memorandum in response two weeks early, on September 8, 2000. The District Court subsequently received a letter submission from the government on October 5, 2000. It then denied Bendolph's § 2255 motion as untimely about three months later, on January 3, 2001. On these facts, we hold that Bendolph was provided adequate notice of the timeliness issue, as well as adequate opportunity to respond.

---

[20] We do not reach the issue of whether the government's actions constituted an inadvertent waiver, intentional waiver, or no waiver because, no matter the answer to that question, the court possessed the ability to act *sua sponte*.

Because the District Court flagged timeliness after the Rule 4 period had ended, we must next consider "the ultimate issue," prejudice to Bendolph. *Long*, 393 F.3d at 401. We look first to how late in the case the limitations issue was raised. *Id*. Here, as stated, the District Court raised the issue on August 24, 2000; the government, in turn, did so on October 5, 2000. These two events occurred almost two years after October 18, 1998, the date Bendolph filed his § 2255 motion. During that time, the record reflects the following activity in Bendolph's case: he filed a motion to compel discovery, which was denied; the case was reassigned upon the retirement of the District Judge; and Bendolph was ordered to make an election pursuant to *United States v. Miller*, 197 F.3d 644 (3d Cir. 1999). On these facts, the raising of timeliness was not so late that Bendolph was prejudiced. There is no evidence that he had commenced costly or time-consuming discovery, suffered a loss or a diminution of his ability to prepare his case, or lost another litigation opportunity elsewhere. As such, while "[d]elay is related to prejudice," and while a period of almost two years may be strong evidence of prejudice in another case, "[it] was not a problem here." *Long*, 393 F. 3d at 401. The prejudice inquiry looks next to whether Bendolph had sufficient opportunity to respond to the issue, once raised. *See id*. We have already discussed this in our analysis of notice; such opportunity was plain from the District Court's August 24, 2000 order and Bendolph's memorandum in response. There is no problem here, either. Finally, we consider whether the government acted in bad faith.

31

Just as it would be unfair to ascribe the altered judgment entry date to Bendolph himself, rather than someone acting on his behalf, it would also be unfair to suggest that the government's delay was improper.[21]  See *Long*, 393 F.3d at 401 ("[i]nadvertence does not equal bad faith").

No prejudice arising from the District Court's *sua sponte* flagging of the issue, and notice and an opportunity to respond having been shown on this record, we affirm the District Court's dismissal of the § 2255 motion in *Bendolph* as untimely.

This leaves *Otero*.  We have already reversed and remanded for failure to appoint counsel, as discussed *supra*.  As to the remaining issue of whether the District Court may consider the apparent untimeliness of Otero's § 2255 motion *sua sponte* on remand, we answer in the affirmative, provided the District Court gives notice, an opportunity to respond, and a prejudice analysis consistent with this opinion and our prior decision in *Long*.[22]

---

[21]  At the time, we had not yet rendered our decision in *Kapral, supra*, and in any event the petition for *certiorari* had been improperly altered.

[22]  Although the issue has not been raised before us, it appears that the delay in *Otero* may exceed that in *Bendolph* and *Long*, as Otero filed his § 2255 motion on June 25, 2001.  As noted, delay alone is not dispositive and must be considered along with the other components of prejudice that we identified in *Long* and reaffirm today.

32

D.

In conclusion, we hold that, upon finding a potential AEDPA statute of limitations problem in a habeas case arising under 28 U.S.C. §§ 2254 or 2255, a court may act *sua sponte* at any point in the proceedings, regardless of the government's position, provided the court (i) gives notice of the issue and an opportunity to respond; and, (ii) if the case has passed the Rule 4 stage, also analyzes the prejudice components of Rule 15(a) and *Long* that we reaffirm today.[23]  The application of these mandatory requirements, like the determination of timeliness itself, remains subject to plenary review.  *See Long*, 393 F.3d at 396.  What remains, including whether to raise timeliness *sua sponte* in the first place, and, if so, whether to invite the government to amend its answer or not, remains within the district courts' sound discretion and will not be disturbed absent an abuse of that discretion.  *Id.*

For the foregoing reasons, the January 3, 2001 order of the District Court dismissing the § 2255 motion of Herbert Bendolph is affirmed, and the February 4, 2002 order of the District Court dismissing the § 2255 motion of Julio Otero and denying his ineffectiveness of counsel claim is reversed and

---

[23]  We leave for another day whether or not a district court may apply the statute of limitations if the government has *intentionally* waived this defense and continues to do so after the district court has raised the issue.

33

remanded to the District Court for further proceedings consistent with this opinion.

NYGAARD, Circuit Judge, with whom Judges SLOVITER, MCKEE, AMBRO and FUENTES join, concurring in part and dissenting in part:

I concur with the majority that we must reverse the dismissal of Otero's ineffective assistance of counsel claim and remand for the District Court to decide whether Otero is indigent and qualifies for appointed counsel. I concur with the majority that, subject to notice and an opportunity to be heard, a district court may dismiss a habeas petition *sua sponte* as part of its preliminary consideration pursuant to Rule 4 of the rules governing both section 2254 and section 2255 cases. I also concur with the majority that the one year statute of limitations contained in the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. §§ 2244(d)(1), 2255, is subject to waiver as a defense by the government. *See Robinson v. Johnson*, 313 F.3d 128, 134 (3d Cir. 2002). But thereafter the majority and I part company. I dissent from the majority's holding that a district court has the authority to raise AEDPA's statute of limitations *sua sponte* after the government has failed to raise that affirmative defense in its answer to the petition.

I.

As an initial matter, I would remand Bendolph's petition for a factual finding on the equitable tolling claim he raised on

appeal.  As explained by the majority, the Clerk of the Supreme Court mistakenly filed Bendolph's untimely petition for *certiorari* because the date on the copy of our judgment entry had been altered, making the petition appear timely.  Because the Clerk did not reject his *certiorari* petition as untimely, Bendolph believed, in error, that AEDPA's statute of limitations did not begin to run on his habeas petition until one year from the date the Supreme Court denied *certiorari*.  Bendolph, therefore, did not file his habeas petition within one year of the date his conviction actually became final as AEDPA requires.  *See* 28 U.S.C. § 2255.  On appeal before the panel, he argued that the mistaken filing of his *certiorari* petition by the Clerk of the Supreme Court is grounds for equitable tolling of AEDPA's statute of limitations.  Because it is unclear who altered the record, we cannot know whether equitable tolling is appropriate and we should remand for further factual findings.

AEDPA's statute of limitations is subject to equitable tolling.  *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001).  Out of a sense of equity, we will toll the statute of limitations when a petitioner demonstrates reasonable diligence in bringing a claim, but "has in some extraordinary way been prevented from asserting his or her rights."  *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618.  In non-capital cases, "attorney error, miscalculation, inadequate research, or other mistakes have not been found [by this Court] to rise to the 'extraordinary' circumstances required for equitable tolling."  *Fahy*, 240 F.3d at 244.  We have also held, however, that there are "narrow

circumstances in which misbehavior of an attorney may merit such equitable relief." *Seitzinger v. Reading Hosp. & Med. Cent.*, 165 F.3d 236, 239 (3d Cir. 1999). For instance, in *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), a habeas petitioner accused his attorney of leading him to believe that the attorney would file a habeas petition on his behalf, and of telling him that there were no time constraints on habeas petitions. *Id*. We found that, if true, the allegations "may constitute extraordinary circumstances to justify equitable tolling." *Id*. Nevertheless, because the Court was unable to determine the validity of the accusations, it remanded for a factual finding. *Id*.

Like in *Nara*, a remand is presently appropriate. Although it is unclear who altered the date on this Court's judgment entry, the alteration misled the Clerk of the Supreme Court to believe that Bendolph's petition for *certiorari* was timely. It is entirely possible that the alteration is the result of clerical error. Indeed, there is no evidence in the record that Bendolph's federal public defender altered the document herself, innocently or otherwise. Nor is there evidence that she purposefully or knowingly submitted an altered document to the Clerk of the Supreme Court. If the federal public defender altered the document, her actions would be sufficiently serious to constitute an "extraordinary" prevention of Bendolph's ability to assert his rights that would merit equitable tolling. I believe it patently unfair of the majority to acknowledge the altered date and then simply affirm the District Court without permitting Bendolph the opportunity to show that he was misled into

36

believing he had time to file his habeas petition. Because the record does not permit us to determine who is responsible for the alteration, we should remand for the District Court to make factual findings, and for it to determine whether the statute of limitations should be tolled. Under these circumstances, there is a possibility that Bendolph's petition was indeed timely.

## II.

In the event the petitions were untimely, Rule 5(b) of the Rules Governing Section 2254 Cases in the United States District Courts requires that an answer to a habeas petition "*must state whether any claim in the petition is barred by a failure to exhaust state remedies, a procedural bar, non-retroactivity, or a statute of limitations*." Section 2254 Rule 5(b) (emphasis added).[24] The phrase "statute of limitations" was added to Rule 5(b) in December 2004 as part of a "stylistic" change meant to reflect the existing state of the law. *See* Section 2254 Rule 5, cmt.

At the time of the amendment, the Courts of Appeals for

---

[24] Although Rule 5(b) of the Section 2255 Rules does not require the government to state whether any statute of limitations applies, as the majority points out, "we have followed the practice, whenever we decide an AEDPA issue that arises under § 2254 and the same holding would analytically be required in a case arising under § 2255, or vice versa, of so informing the district courts." *Miller*, 145 F.3d at 619 n.1. I agree with the majority that on the question of a district court's continuing authority (or lack thereof) to raise the statute of limitations *sua sponte* after the government's answer, we should treat section 2254 and section 2255 cases the same. I reach a different conclusion as to that question, of course.

the Sixth, Ninth, and Eleventh Circuits had addressed the effect
of the government's failure to raise the AEDPA statute of
limitations in its answer on a district court's authority to
subsequently raise the issue *sua sponte*. In *Scott v. Collins*, 286
F.3d 923, 927 (6th Cir. 2002), the Sixth Circuit held that because
AEDPA's statute of limitations is an affirmative defense, "Rule
8(c) of the Federal Rules of Civil Procedure requires that [the
government] raise it in the first responsive pleading to avoid
waiving it."[25] The Court held that the government's failure to
raise the statute of limitations in its answer divests the district
court of its authority to raise the defense *sua sponte*. *Id*. at 930.
It explained that a contrary rule would amount to "an
impermissible curing of [the government's] waiver." *Id*. The
Ninth Circuit applied similar reasoning in *Nardi v. Stewart*, 354
F.3d 1134 (9th Cir. 2004). It held that a "district court lacks the
authority to *sua sponte* dismiss a habeas petition as time-barred
after the state files an answer which fails to raise the statute of
limitations defense." *Id*. at 1141. By contrast, the Eleventh
Circuit, in *Jackson v. Secretary for the Department of
Corrections*, 292 F.3d 1347, 1349 (11th Cir. 2002), held without

---

[25] The Federal Rules of Civil Procedure may be made
applicable to habeas cases "to the extent they are not inconsistent
with any statutory provisions or [the Habeas] rules." Section 2254
Rule 11; *see* Section 2255 Rule 12. Applying Civil Procedure Rule
8(c), which mandates that parties set forth any affirmative defenses
they might have—including the statute of limitations—in a
responsive pleading, is consistent with the mandate of Rule 5(b) of
the Section 2254 Rules that the government shall state in its answer
whether the petition is barred by a statute of limitations.

any analysis that the government's failure to raise the statute of limitations in its answer has no effect on a district court's ability to raise the issue *sua sponte*. Thus, at the time of this Court's decision in *Long v. Wilson*, 393 F.3d 390 (3d Cir. 2004), there existed a circuit split. In *Long*, we sided with the Eleventh Circuit, *id*. at 403, and today the majority reaffirms that choice, albeit in the context of a section 2255 petition rather than a section 2254 petition. We are on the wrong side of the split between the circuits.

Underlying the *Scott* and *Nardi* decisions is the rule that generally it is not appropriate for a court to *sua sponte* raise non-jurisdictional defenses not raised by the parties. *See Acosta v. Artuz*, 221 F.3d 117, 122 (2d Cir. 2000) ("Generally, courts should not raise *sua sponte* nonjurisdictional defenses not raised by the parties."); *cf. Zelson v. Thomforde*, 412 F.2d 56, 58 (3d Cir. 1969) (holding that a court may not raise the defense of lack of personal jurisdiction—a non-jurisdictional defense because it does not concern the power of the court to entertain the suit—once the defendant has waived the issue by appearing). This rule exists because ours is an adversarial system, which relies on advocacy by trained counsel. *Cf. United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring) ("The rule that points of law not argued will not be considered is more than just a prudential rule of convenience; its observance, at least in the vast majority of cases, distinguishes our adversary system of justice from the inquisitorial one."). In an adversarial system, it is not for the courts to bring to light the best arguments for

39

either side; that responsibility is left to the parties themselves. *McNeil v. Wisconsin*, 501 U.S. 171, 181 n.2 (1991) ("What makes a system adversarial rather than inquisitorial is . . . the presence of a judge who does not (as an inquisitor does) conduct the factual and legal investigation himself, but instead decides on the basis of facts and arguments pro and con *adduced by the parties*.") (emphasis added). As the Supreme Court has explained, "[t]he determination of what may be useful to the defense can properly and effectively be made only by an advocate." *Dennis v. United States*, 384 U.S. 855, 875 (1966).

We should decline to raise non-jurisdictional defenses for another reason as well: fairness to the other party. Typically, it is not fair for courts to act as surrogate counsel for one side but not the other. *See United States v. Pryce*, 938 F.2d 1343, 1352 (D.C. Cir. 1991) (Silberman, J., dissenting in part) ("We thus ordinarily have no right to consider issues not raised by a party in either briefing or argument . . . because of the unfairness of such a practice to the other party. . . ."); *see infra*, Part III.A.

Of course I acknowledge that there are exceptions to this rule of restraint. The Supreme Court has held that, in the interests of comity and federalism, courts may raise a habeas petitioner's failure to exhaust state remedies *sua sponte*, even if the government does not. *Granberry v. Greer*, 481 U.S. 129, 131 (1987); *cf. Szuchon v. Lehman*, 273 F.3d 299, 321 n.13 (3d Cir. 2001) (holding that in the interests of comity and federalism a court may raise procedural default *sua sponte*). And in *Acosta v. Artuz*, a case relied upon heavily by the Court in *Long*, the

Second Circuit held that courts may raise non-jurisdictional defenses *sua sponte* where "the defenses implicate values beyond the interests of the parties." *Acosta*, 221 F.3d at 121. The *Acosta* Court held that a district court may raise AEDPA's statute of limitations *sua sponte* because it believed that defense fosters finality of convictions, promotes judicial efficiency and conservation of resources, and ensures the accuracy of judgments by resolving challenges to convictions while the record is fresh. *Id*. at 123. However, when a court examines a habeas petition for facial deficiencies pursuant to Rule 4, and finding none orders the government to answer, only to have the government fail to raise timeliness as a defense, each of those values become substantially less significant. When measured against the purpose and history of habeas corpus in our jurisprudence, those values shrink even further.

Initially, the *Long* Court noted that in considering the values beyond the interests of the parties served by AEDPA's statute of limitations, comity and federalism are the "most important[]." *Long*, 393 F.3d at 403. The logic behind this statement renders it irrelevant. Unlike the defenses of exhaustion and procedural default, statutes of limitation do not implicate the interests of comity and federalism. Those defenses are designed to ensure that state courts have "an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981). The same cannot be said for a statute of limitations. When a state prisoner's habeas petition is dismissed as untimely,

the prisoner is not permitted to file his action in state court. Instead, he simply loses the ability to test the legality of his confinement. In the case of a section 2255 petition filed by a federal prisoner—as we have here—state courts are not involved in the trial and sentencing process whatsoever, and thus federalism and comity are simply irrelevant.

Similarly, judicial efficiency and economy are not implicated by a post-answer *sua sponte* dismissal pursuant to AEDPA's statute of limitations. If a district court reviews a petition for deficiencies pursuant to Rule 4 and does not dismiss it, and the government then fails to raise the statute of limitations, the parties and the court begin to expend time and effort on the merits of the petition. At this point, judicial efficiency and economy are already lost. The very purpose of affirmative defenses, such as the statute of limitations, is to conserve judicial resources by requiring the parties to raise them *early* in the proceedings. *Robinson*, 313 F.3d at 134. Rescuing the government from its folly or inadvertence by permitting a district court to raise the statute of limitations after the parties have begun to address the merits of the petition subverts that purpose, and may even have the opposite effect. If the statute of limitations is raised late in the proceedings, the parties must then brief yet an additional issue, which consumes the resources of all involved. I recognize that by permitting a district court to dismiss a habeas petition as untimely, some resources may be saved. But the same can be said for dismissing any lawsuit at any point. Yet it is not the general practice of this Court to raise

the statute of limitations or other affirmative defenses either in
civil or criminal cases in order to conserve judicial resources.
Courts exist to resolve disputes.  The resources of the courts
should be used to that end.  And what better use of judicial
resources (or higher calling for the federal judiciary for that
matter) could there be than ensuring that no one is incarcerated
in violation of the law?

The majority makes a great deal of the interests of finality
AEDPA was enacted to serve.  There is no doubt that habeas
corpus "presents a tension between the desire for finality, an end
to the proceedings, and a desire to provide the chance for
revisions, especially to correct errors."  Erwin Chemerinsky,
*Thinking About Habeas Corpus*, 37 CASE W. RES. L. REV. 748,
789 (1987).  As Professor Chemerinsky has pointed out, "[t]here
obviously must be finality at some point; a time when the
defendant has had sufficient opportunities for review and the
chances of finding an error are too remote to justify further
expenditure of resources."  *Id*.  But on the other hand, conviction
of the innocent or conviction in violation of the Constitution
should not be tolerated.  *See id*.  Even those who have strongly
emphasized a preference for curbing the scope of habeas corpus
have acknowledged that "conventional notions of finality" have
diminished significance in the context of habeas.  *See* Henry J.
Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal
Judgments*, 38 U. CHI. L. REV. 142, 150 (1970) (quotation
omitted).

At the earliest, AEDPA's statute of limitations begins to

run when a prisoner's conviction becomes final, upon the conclusion of direct review. *See* 28 U.S.C. §§ 2244, 2255. Indeed, it may well not begin for decades if, for instance, the petitioner relies on a retroactively applicable rule of constitutional law as recognized by the Supreme Court. 28 U.S.C. §§ 2244(d)(1)(C), 2255. Moreover, AEDPA's statute of limitations is subject to equitable tolling. *Fahy* 240 F.3d at 244. Many *timely* habeas petitions, therefore, might not be heard until years after conviction. In such a situation, the finality of the conviction is put in jeopardy—which, after all, is the very purpose of habeas review—as much as when a habeas petition is untimely filed and the government fails to raise a statute of limitations defense. Thus, concerns of finality are no more implicated after the government answers without raising timeliness than by many, if not most, habeas proceedings where timeliness is not an issue.

"In our adversary system, it is enough for judges to judge." *Dennis*, 384 U.S. at 875. Advocacy is best left to the parties. Thus, as a general rule, courts should not raise non-jurisdictional defenses on behalf of parties who do not raise the defenses for themselves. *Acosta*, 221 F.3d at 122. The Supreme Court has permitted departures from that general rule only when values beyond the interests of the parties are implicated. *See Granberry*, 481 U.S. at 131; *see also Szuchon*, 273 F.3d at 321 n.13. No such values are sufficiently implicated by a *sua sponte* dismissal for lack of timeliness where, as here, the government has failed to raise the statute of limitations in its

44

answer.

III.

A.

Even if a *sua sponte* dismissal of the petitions in this case would serve values beyond the interests of the parties, I would still dissent because of the damage dismissal would work upon two countervailing values the majority fails to consider: the related notions of waiver and fundamental fairness.

The majority's decision renders the concept of waiver a nullity. We held in *Robinson*, 313 F.3d at 134, that AEDPA's statute of limitations is subject to waiver. In both *Bendolph* and *Otero* the government explicitly waived that defense.[26] And while the majority reaffirms our holding in *Robinson*, at the same time it effectively destroys that portion of *Robinson* by holding that the government's waiver is irrelevant. If a court may raise a non-jurisdictional defense once it has been waived, then waiver has no practical effect; it exists in theory alone. *See Haskell v. Washington Township*, 846 F.2d 1266, 1273 (6th Cir. 1988) (explaining that if a district court may raise the statute of limitations *sua sponte* once it has been waived, "the waiver aspect of Rule 8(c) would have little meaning"). Thus, as a

---

[26] In *United States v. Otero*, 02-2624, counsel for the United States stated during oral argument before the panel: "We waived the statute of limitations. There's no question under this Court's *Robinson* decision that we waived the statute of limitations." (Oral Argument Tr. at 36). Similarly, in *United States v. Bendolph*, 01-2468, counsel for the United States explained, "we waived the statute of limitations." (Oral Argument Tr. at 56).

45

result of the majority opinion, it appears that AEDPA's statute of limitations is no longer subject to waiver.[27]  I doubt very much whether courts will be so forgiving of a procedural error by a habeas petitioner.[28]

As for the issue of fairness, *Pliler v. Ford*, 542 U.S. 225, 124 S.Ct. 2441 (2004), is instructive.  In *Pliler*, the Supreme Court reversed a decision by the Ninth Circuit, which required district courts to give *pro se* habeas petitioners a warning that if they dismiss their petitions in order to first exhaust state remedies, AEDPA's statute of limitations might bar them from refiling a future petition in federal court.  According to the Ninth Circuit, the failure to provide the *pro se* habeas petitioner in that case with such a warning deprived him of the opportunity to make a "meaningful" choice concerning his petition.  *Id*. at 2445

---

[27]  Incidentally, had Congress wanted to protect AEDPA's statute of limitations from waiver, it could have done so by statute as it did for the defense of failure to exhaust state remedies. Pursuant to 28 U.S.C. § 2254(b)(3), "[a] State shall not be deemed to have waived the exhaustion requirement . . . unless the State, through counsel, expressly waives the requirement." Congress has afforded the defense of AEDPA's statute of limitations no such protection, and even if it had, counsel for the United States explicitly waived the defense in each of these consolidated cases. The majority simply excuses that waiver, instead vesting in the district courts the discretion whether to raise the statute of limitations *sua sponte* in any given case.  That grant of authority is likely to create vast disparities concerning the treatment of government waiver between judges and from one case to the next. Those disparities will in turn be visited upon petitioners.

[28]  Indeed, courts routinely dismiss petitions, standing upon mere punctilios in the law.

46

(citing *Ford v. Hubbard*, 330 F.3d 1086, 1102 (9th Cir. 2003)).
The Supreme Court disagreed.  It held that district courts need
not warn *pro se* litigants that AEDPA's statute of limitations
might preclude them from filing any future petitions if they
withdraw a timely petition.  *Id*. at 2446.  According to the Court,
explaining habeas procedure and calculating the statute of
limitations are tasks normally reserved for trained counsel, and
"[r]equiring district courts to advise a *pro se* litigant in such a
manner would undermine the district judges' role as impartial
decisionmakers."  *Id*.

    While one might argue that it is the *pro se* habeas
petitioners—who are without the assistance of trained
counsel—who need to be warned by district courts of AEDPA's
labyrinthine pitfalls most of all, the Court's decision in *Pliler* is
clear: district courts may not act as *de facto* counsel in habeas
proceedings.  Fairness dictates that we apply this rule equally to
both sides, but the majority does not.  The majority permits a
district court to act as *de facto* counsel for the government,
working together toward the common goal of dismissal of the
petition.  That is unfair.  A habeas petitioner gets no help from
the courts, and the government needs none either.  If, as Justice
Thomas explained in *Pliler*, calculating the statute of limitations
is a job ordinarily reserved for trained counsel, then that job
should be left in the able hands of the government's attorneys.
Any other rule contravenes the fundamental notion that "the
judiciary is on *no* side. . . . We judges must be strictly neutral
with respect to all cases that come before us."  *Pryce*, 938 F.2d

at 1352 (Silberman, J., dissenting in part).

The Court today permits and perpetuates a double standard. *Cf. Latorre v. United States*, 193 F.3d 1035, 1042 n.3 (8th Cir. 1999) (Lay, J., concurring in result only) ("It is ironic . . . that in a § 2255 case a petitioner may not raise an issue on appeal when the issue has been procedurally defaulted in the district court, yet the court expressly ignores this principle when dealing with the United States government."). It also sends a disturbing message: We will aid the government in a habeas proceeding, but not the petitioner. The mistakes of the government may be excused and ignored, but any error by the petitioner is fatal—perhaps figuratively, but too often literally. The favored-party status the majority affords to the government in habeas cases undermines both the appearance and fact of judicial neutrality, and I will have no part in it.[29]

### B.

Habeas corpus is not a luxury or an extravagance to be tolerated only when convenience permits. It is a fundamental protection of liberty "against arbitrary and wrongful

---

[29] I do not believe my colleagues in the majority intend to be less principled or less fair than I. I do believe, however, that the majority sacrifices a little of both principle and fairness at the altar of expedience. Courts have admittedly crowded dockets. Those dockets include many habeas petitions, and I fear that the petitions with merit are outnumbered by those without. Any rule that would permit district courts to more easily dispose of habeas petitions might therefore seem desirable. But when individual liberty is at stake—as is the case with any habeas petition—expedience and self-interest ought not inform our decisions.

imprisonment" that predates these United States.  Chemerinsky, at 749.  The Framers viewed it as "the highest safeguard of liberty," *Smith v. Bennett*, 365 U.S. 708, 712 (1961)—a protection against arbitrary punishment and convictions to be "provided for in the most ample manner," THE FEDERALIST NO. 83 (Alexander Hamilton).  Since the 1970s, however, the road to habeas relief has "become a narrow[], more tortuous track among concealed snake-pits and anti-personnel mines calculated to daze cartographers and daunt a modern Gilgamesh."  Anthony G. Amsterdam, *Foreward* to JAMES S. LIEBMAN & RANDY HERTZ, FEDERAL HABEAS CORPUS PRACTICE AND PROCEDURE, at v (2d ed. 1994).  We continue to pile on "petty procedural barriers," resulting in a "Byzantine morass of arbitrary, unnecessary, and unjustifiable impediments to the vindication of federal rights."  *Coleman v. Thompson*, 501 U.S. 722, 758–59 (1991) (Blackmun, J., dissenting).  This, in my view, is a great tragedy.

I constantly counsel myself and my law clerks that somewhere in the mass of usually convoluted, often marginally-comprehensible *pro se* habeas petitions, there is another Clarence Earl Gideon, or one of the other faceless names for whom we do issue the Great Writ.  Searching for those meritorious petitions is not only our duty, it is one of our most important.  I am not alone in believing that the writ of habeas corpus may be the single most significant protection of individual rights in the Constitution.  *See* Chemerinsky, at 749.  I am simply adding my voice to the chorus.  While technically the

writ exists only as a procedural device, "its history is inextricably intertwined with the growth of fundamental rights of personal liberty." *Fay v. Noia*, 372 U.S. 391, 399–400 (1963), *abrogated on other grounds by Coleman*, 501 U.S. at 722. A threat to the writ's vitality is a threat to those very fundamental rights. "It must never be forgotten that the writ of habeas corpus is the precious safeguard of personal liberty and there is no higher duty than to maintain it unimpaired." *Bowen v. Johnston*, 306 U.S. 19, 26 (1939). In the name of reducing the docket of the district courts, and seduced by the lure of a one-line order, the majority evades its sacred duty. I dissent.

SLOVITER, <u>Circuit Judge</u>, with whom Judges Nygaard, McKee, Ambro and Fuentes join, dissenting.

I join Judge Nygaard's dissent but wish to note additionally that the opinion in <u>Long v. Wilson</u>, 393 F.3d 390 (3d Cir. 2004), deviates from this court's well-established rule that "a holding of a published opinion of the court may not be overruled without the approval of a majority of the en banc court." Third Circuit IOP A(2). Although the opinion of the majority in this case refers to our decision in <u>Robinson v. Johnson</u>, 313 F.3d 128 (3d Cir. 2002), without overruling it, the majority relies on our subsequent opinion in <u>Long</u> which, while also purporting to accept the <u>Robinson</u> holding, in fact eviscerates it. Notwithstanding the Commonwealth's failure to timely raise the statute of limitations defense, <u>Long</u> allowed the

Commonwealth to recoup that defense fourteen months later by its "endorse[ment] [of] the Magistrate Judge's view that the habeas petition was untimely." Id. at 395.  The Long court, by applying the stratagem of a constructive Rule 15(a) amendment, effectively nullified the Robinson requirement that the Commonwealth assert its statute of limitations defense in a timely manner.

The only effect of holding that the Government (or the Commonwealth in an appropriate case) waived its statute of limitations defense is that the matter will proceed on the merits. If the petitioner cannot show that his or her constitutional rights have been violated, the District Court will undoubtedly grant summary judgment for the Government  in short order.  If the petitioner has sufficient evidence of a violation of his or her rights, then the purpose of the habeas corpus statute will have been fulfilled.

Unlike the majority, I do not believe that "the public interest and the public reputation of judicial proceedings" will suffer if this court holds the Government to its waiver of the statute of limitations.  Maj. Op. at 25.  Indeed, it should only enhance its reputation by applying the procedural rules equally to petitioners and to the Government.